IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRUCE R. WENNER and | ) | |
| FRANCES C. WENNER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 08-2269-CM |
| | ) | |
| BANK OF AMERICA, NA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Bruce and Frances Wenner, husband and wife, bring this action against their bank, Bank of America, NA, ("BOA"). This case is before the court on three motions: (1) plaintiffs' motion to amend their complaint to add a claim under the Kansas Consumer Protection Act ("KCPA") (Doc. 32); (2) plaintiffs' motion to amend their complaint to add BOA's credit card division, FIA Card Services, N.A. ("FIA") as a party (Doc. 42); and (3) defendant BOA's motion to dismiss (Doc. 52). For the following reasons, the court grants plaintiffs' motions to amend, and grants in part and denies in part defendant's motion to dismiss.

## I. Factual Background

According to plaintiffs' second amended complaint, plaintiffs had a checking account with BOA, which they set up to automatically make a monthly electronic transfer of $2564.63 to Chase Home Finance ("Chase") for their mortgage payment. BOA's electronic bill pay service ensured protection of its customers in the case of unauthorized transfers, and provided overdraft coverage

through cash advances charged to plaintiffs' BOA credit card.[1]

On or about December 16, 2005, plaintiffs closed the checking account, presumably terminating the automatic bill-pay. Because they closed the checking account, they made their December 2005 mortgage payment to Chase from a different checking account they held with Capitol Federal Savings.

On or about December 28, 2005, a $2,600.00 charge appeared on plaintiffs' BOA credit card, apparently to cover a transfer from their closed BOA bank account. Plaintiffs became aware of the unauthorized transfer and charge, and contacted an employee at their local BOA branch bank. Plaintiffs signed paperwork to reconfirm that their account was closed, and were directed to contact BOA's credit card division. The credit card division directed plaintiffs back to the banking division, which again insisted the credit card division needed to resolve the problem. On January 26, 2006, plaintiffs sent a letter to BOA's credit card division disputing the December 2005 charge.

On January 28, 2006, another $2,600.00 charge appeared on plaintiffs' credit card for plaintiffs' January 2006 mortgage payment to Chase. On February, 26, 2006, plaintiffs sent a letter to the credit card division disputing both the December 2005 and January 2006 charges. The banking division referred plaintiffs to the credit card division, and vice versa. BOA did not conduct investigations or offer reports regarding the contested charges. BOA failed to respond to plaintiffs' repeated demands to remove the unauthorized charges, and instead made repeated collection calls, sent delinquency notices, and threatened to refer the account to a collection agency.

---

[1] Plaintiffs assert that, at the time this cause of action arose, defendant BOA's credit card division was called Bank of America, NA (USA). Plaintiffs subsequently learned and now believe that FIA merged with BOA and became BOA's credit card division; and that at all times, the banking and credit card services were BOA-branded and bundled to BOA bank customers.

On February 12, 2007, plaintiffs sent a letter to BOA's Chief Executive Officer, describing their situation and BOA's failure to correct mistakes relating to their account. A BOA representative suggested plaintiffs provide proof that Chase had not received the unauthorized payments posted to plaintiffs' account. On March 26, 2007, plaintiffs provided their December 2005 and January 2006 statements from both Chase and Capitol Federal, under the belief that these documents established that the unauthorized payments had not actually been made to Chase.

Plaintiffs allege that BOA, in concert with FIA, reported negative information to one or more of the three major credit reporting agencies (CRAs)—Experian, Trans Union, and Equifax—regarding plaintiffs' credit card account without also reporting that plaintiffs disputed the debt. Plaintiffs informed the CRAs of the dispute and requested investigations of the negative reports. Plaintiffs assert that the CRAs contacted BOA's banking and/or credit card division to verify the reports, but BOA and/or FIA failed to conduct a reasonable investigation in response to the credit reporting agencies' inquiries. FIA sold or assigned the disputed debt to Asset Management Professionals ("AMP"), a debt collection agency. Plaintiffs do not allege dates or a time frame related to any of this conduct.

Additionally, after this action commenced, plaintiffs discovered that Chase *had* received the unauthorized payments from BOA in addition to plaintiffs' payments from their Capitol Federal account. Plaintiffs arranged for the payments to be returned to BOA.

**II. Procedural Background**

Plaintiffs filed this action against BOA on June 11, 2008, originally alleging a violation of the Federal Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq*. ("FCRA"); and common-law defamation. (Doc. 1.)

The court entered a scheduling order on October 1, 2008 (Doc. 12), setting a deadline of

December 1, 2008 for amending the pleadings or joining parties.

On December 1, 2008, plaintiffs filed (1) a motion for extension of time to add parties (Doc. 31); and (2) a motion for leave to amend their complaint (Doc. 32), alleging some of their factual allegations were incorrect or incomplete in light of discovery, and seeking to add a claim under the Kansas Consumer Protection Act ("KCPA").

The court granted defendant BOA an extension of time to respond to plaintiffs' motions until January 15, 2009.  (Doc. 39.)

On December 17, plaintiffs filed a motion for leave to file a second amended complaint, seeking to add FIA as a party.  (Doc. 42.)

Defendants[2] sought an extension of time to respond to plaintiffs' second motion to amend, indicating their desire to file a consolidated response to plaintiffs' motions on January 15, 2009, and seeking leave to file that response under seal.  (Doc. 43.)

The court granted defendants until January 15, 2009 to file a consolidated response to plaintiffs' motions to amend.  (Doc. 44.)

On January 15, 2009, defendants filed a motion to dismiss under seal.  (Doc. 52.)  The memorandum of law in support of this dispositive motion also contains defendants' responses to plaintiffs' motions to amend.  Discovery has been stayed pending resolution of the outstanding motions.  All responses and replies having now been filed, the court is ready to rule on the pending motions.

**III. Motions to Amend**

Rule 15 of the Federal Rules of Civil Procedure governs the procedure for amending

---

[2] In its current posture, there is only one defendant in this case.  However, in light of the relationship between the parties, the arguments made in BOA's motions on FIA's behalf, and for ease and clarity, this court will refer to "defendants" throughout this memorandum and order.

pleadings. Where, as here, responsive pleadings have been served, a party may amend only by leave of court, and such leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). The decision is entrusted to this court's discretion. *Hall v. Witteman*, No. 07-4128-SAC, 2008 WL 2949567, at *4 (D. Kan. July 30, 3008) (citing *Stewart v. Brd. of Comm'rs for Shawnee County, Kan.*, 216 F.R.D. 662, 664 (D. Kan. 2003)). Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith, or futility of amendment. *Id*.

In accord with Local Rule 15.1, plaintiffs' first motion to amend concisely states their intent to correct or clarify factual inaccuracies and to add a claim under the KCPA. Plaintiffs' second motion to amend concisely states that they wish to join FIA as a defendant to the current litigation. Plaintiffs attached proposed amended complaints to each motion.

The court finds that plaintiffs should be given leave to amend their complaint. The scheduling order entered on October 1, 2008, set a deadline of December 1, 2008 for amending the pleadings or joining parties. Plaintiffs filed their motion to add a claim within this deadline. And plaintiffs sought and received an extension of the deadline for adding parties. (Docs. 31, 56.) Further extension of this deadline was given at defendants' request. Contrary to defendants' arguments, the court finds that plaintiffs need not further establish good cause under Federal Rule of Civil Procedure 16. The motions do not exhibit undue delay, and granting the motions will not cause undue prejudice. Indeed, due to defendants' combination of responsive pleadings with a dispositive motion, allowing plaintiffs to amend will not require defendants to file a revised motion to dismiss, which it conditioned on both the original and the proposed amended complaints.

Defendants nevertheless allege that amendment would be futile because the FCRA and defamation claims against BOA and FIA fail as a matter of law; the proposed state law claims are

-5-

preempted by the FCRA; one of the FCRA claims is not actionable; and the KCPA claims fail to state a claim as a matter of law.

A court may deny a proposed amendment on the basis of futility if the "amendment would not withstand a motion to dismiss or otherwise fails to state a claim upon which relief may be granted." *Stewart*, 216 F.R.D. at 664 (citing *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992); *Schepp v. Fremont County, Wyo.*, 900 F.2d 1448, 1451 (10th Cir. 1990)). To this end, defendant BOA filed a motion to dismiss, asserting arguments on its own behalf and on behalf of FIA.

### IV. Motion to Dismiss

#### A. Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint—or non-futile amendment—must present factual allegations that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008). In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court assumes as true all well pleaded facts in plaintiffs' complaint and views them in a light most favorable to plaintiffs. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also* Fed. R. Civ. P. 8(a).

#### B. Material Considered

Defendants' motion is accompanied by twenty-one exhibits. On a Rule 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Fed. R. Civ. P. 12(b). In general, a motion to dismiss must be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998).

Notwithstanding this general rule, the district court may consider documents referred to in the complaint "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1215 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

Defendants suggest that the court can consider the 123 pages of attached documents without converting the motion to one for summary judgment because plaintiffs refer to and rely on each of these documents in their complaint. In response, plaintiffs ask this court to consider only the complaint as amended and to reject the offered documents as not being central to plaintiffs' claim.

The court finds that the three claims set out in plaintiffs' second amended complaint do not require this court to consider the evidence offered by defendant BOA at this time. This case is currently before the court on a number of pending motions, conditioned on contingencies of additional parties and claims. The court will not convert defendants' omnibus motion to one for summary judgment by considering the attached evidence. The parties' dispositive motion deadline has not yet passed. If the parties wish to seek summary judgment, they may do so pursuant to Federal Rule 56. At this time, the court will evaluate only whether plaintiffs' complaint, with the proposed amendments, is sufficient to state a claim to relief that is plausible on its face.

### C. Discussion

#### 1. FCRA claim

Plaintiffs allege that defendant BOA violated the FCRA by (1) continuing to report plaintiffs

-7-

as delinquent to CRAs without also informing the CRAs of the dispute over the transfer and debt; and (2) failing to reasonably investigate the validity and accuracy of the debt when notified by the CRAs that plaintiffs disputed the report. They allege a willful violation, seeking attorney's fees, actual or statutory and punitive damages, 15 U.S.C. §§ 1681n, or, in the alternative, negligence entitling plaintiffs to actual damages and attorney's fees. Plaintiffs cite 15 U.S.C. §1681s-2(b) as the statute under which their cause of action arises.

Defendants argue that: (1) plaintiffs' failure to allege that BOA is a "furnisher" is fatal to its complaint; (2) plaintiffs' claim for a violation of 15 U.S.C. §1681s-2(a) fails as a matter of law.

### a. "Furnisher"

The FCRA imposes obligations on three types of entities: CRAs, users of consumer reports, and furnishers of information to CRAs. *Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350, 1353 (D. Kan. 2006) (citing 15 U.S.C. § 1681, *et seq.*). Section 1681s-2 sets out the duties of "furnishers" to report accurate information to CRAs and to correct inaccurate information. After a furnisher of information receives notice of a consumer dispute from a credit reporting agency, the furnisher must investigate the consumer dispute, report the results of the investigation to the consumer reporting agency, and modify or delete information that is inaccurate or incomplete or cannot be verified. *See* 15 U.S.C. § 1681s-2(b); *Millett v. Ford Motor Credit Co.*, No. 04-2450-CM, 2004 WL 1301160, at *2–3 (D. Kan. May 9, 2006). A furnisher of information who violates the FCRA is liable to the consumer for actual damages and attorney's fees and, upon proof of a willful violation, statutory and punitive damages. 15 U.S.C. §§ 1681n, 1681o.

First, the court finds that, although plaintiffs do not specifically allege that BOA is a "furnisher," plaintiffs allege that they are consumers within the meaning of the statute, and that BOA and/or its credit card division transmitted information concerning plaintiffs' alleged debt to CRAs.

*Jarrett v. Bank of America*, 421 F. Supp. 2d 1350, 1352 n.1 (D. Kan. 2006) ("The FCRA does not define the term 'furnisher' but courts have defined the term as an entity which transmits information concerning a particular debt owed by a particular consumer to [CRAs]."). This court makes all reasonable inferences in favor of plaintiffs, and therefore concludes that plaintiffs' complaint adequately alleges that defendants are furnishers for purposes of the FCRA.

### b. Private Cause of Action

Defendants are correct that, although furnishers are required under the FCRA to provide accurate information to CRAs, 15 U.S.C. § 1681s-2(a), Congress did not create a private right of action for violation of this provision. *See Jarrett v. Bank of America*, 421 F. Supp. 2d 1350, 1353 n.2 (D. Kan. 2006) (citing *Whisenant v. First Nat'l Bank & Trust Co.*, 258 F. Supp. 2d 1312, 1316 (N. D. Okla. 2003); *Shields v. U.S. Bank, N.A.*, No. 05-2073, 2006 WL 3791320, at * 3 n.2 (D. Kan. Dec. 22, 2006).

But plaintiffs' complaint does not allege, as part of the FCRA claim, that defendants failed to provide accurate information to the CRAs. It alleges that, having received notice of the dispute, defendants violated the FCRA by continuing to report plaintiffs as delinquent without also informing the CRAs of the dispute; and by failing to reasonably investigate the validity of the debt when notified by the CRAs of plaintiffs' dispute. These allegations are pleaded under section 1681s-2(b)—not (a)—of the FCRA. The statute does not preclude a private cause of action under this section.

Nevertheless, § 1681s-2(b) requires that a furnisher of credit information conduct an investigation "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute" regarding a consumer's credit. 15 U.S.C. § 1681s-2(b). In turn, § 1681i(a)(2) provides that a CRA must provide a furnisher of credit information with prompt notice when a consumer disputes

information. Under the plain language of § 1681s-2(b), a furnisher of credit information has a duty to investigate a dispute only after receiving notice from a CRA–not merely notice from a consumer. *See Millett*, 2006 WL 1301160, at *2–3 (citing, *inter alia*, *Aklagi v. Nations Credit Fin.*, 196 F. Supp. 2d 1186, 1193 (D. Kan. 2002), citing *Hasvold v. First USA Bank, N.A.*, 194 F. Supp. 2d 1228, 1236 (D. Wyo. 2002) (reasoning that a § 1681s-2(b) private cause of action is available only where the furnisher received notice of the dispute from a consumer reporting agency, as opposed to the consumer)). Therefore, plaintiffs' FCRA claims are facially viable to the extent that they allege that defendants "failed to reasonably investigate the validity and accuracy of the debt when notified by the CRAs" of plaintiffs' dispute. (Doc 42-2, at 7.) To this extent, the court finds that plaintiffs' pleading is sufficient to state a claim under § 1681s-2(b) of the FCRA.

### 2. Common-Law Defamation Claim

Defendant BOA argues that plaintiffs' defamation claim must be dismissed for the following reasons: (1) it is preempted by the FCRA provisions; (2) plaintiffs cannot satisfy the elements of defamation; and (3) plaintiffs' defamation claim is barred by the statute of limitations.

#### a. Preemption

As defendant notes, the FCRA contains two potentially relevant preemption provisions: (1) 15 U.S.C. § 1681t(b)(1)(f) provides furnishers of credit information with absolute immunity; and (2) § 1681h(e) provides furnishers of credit information with qualified immunity. Section 1681t(b)(1)(f), the absolute immunity provision, provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."

Section 1681h(e), the qualified immunity provision, states:

> no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer."

This district has recognized that there are at least three different approaches to reconciling the FCRA's two immunity provisions. *Tilley v. Global Payments, Inc.*, No. 06-2304-JPO, 2009 WL 790208, at *13–14  (D. Kan. Mar. 24, 2009); *see also* 8 A.L.R. Fed. 2d 233.  The Tenth Circuit has not yet addressed the issue, nor is there much guidance from other circuits.  *Tilley*, 2009 WL 790208, at *13–14 (citing *Holland v. GMAC Mort. Corp.*, No. 03-2666, 2006 WL 1133224, at *11–12 (D. Kan. Apr. 26, 2006); *Lofton-Taylor v. Verizon Wireless*, 262 Fed. Appx. 999, 1002–03 (11th Cir. 2008) (declining to decide the issue); *Beyer v. Firstar Bank, N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006) (same); *Young v. Equifax Credit Info. Servs., Inc*., 294 F.3d 631 (5th Cir. 2002)).

First, there is the so-called "temporal view–notice by anyone."  Under this view, 15 U.S.C. § 1681t(b)(1)(f) only preempts state law claims arising after a furnisher of information receives notice of a dispute–by anyone–and claims arising before notice are governed by 15 U.S.C.A § 1681h(e).

A variation of this view requires that the triggering notice must be notice by the CRA, not the consumer.  This is the "temporal view–notice by CRA."  *See Harrison v. Ford Motor Credit Co.*, No. 3:03 CV 01291 RNC, 2005 WL 15452 (D. Conn. Jan. 3, 2005); *Woltersdorf v. Pentagon Fed. Credit Union*, 320 F. Supp. 2d 1222 (N.D. Ala. 2004).

Finally, a number of courts adhere to the "statutory view," holding that state statutory claims are preempted by 15 U.S.C.A. § 1681t(b)(1)(F), but common-law claims are covered by 15 U.S.C.A. § 1681h(e).  *See, e.g.,* Wolfe v. MBNA Am. Bank, 485 F.Supp.2d 874, 883–87 (W.D.Tenn. 2007); *McCloud v. Homeside Lending*, 309 F. Supp. 2d 1335 (N.D. Ala. 2004)

The handful of cases coming out of this district discussing preemption under the FCRA have

adhered to the temporal view. However, the question of the source of triggering notice for purposes of preemption is not settled. Although *Aklagi*, 196 F. Supp 2d 1186, discusses at length what claims can support an FCRA cause of action, its discussion on preemption is less clear about from whom notice is required to trigger the preemption. *Aklagi*, 196 F. Supp. 2d at 1193, 1194–96; *see also Cox v. Beneficial Kan., Inc.*, No. 04-4128-JAR, 2005 WL 627974 (D. Kan. Mar. 9, 2005).

One recent case specifically holds that the triggering notice is notice from the CRA. *Tilley*, 2009 WL 790208, at *14 (holding "any state law defamation claim predicated on defendant furnishing inaccurate information to a [CRA] after it received notice of plaintiff's dispute to [the CRA] is completely preempted by § 1681t(B)(1)(F)."

However, another case, authored by the undersigned judge, specifically rejects the "notice by CRA" variation, and holds that 15 U.S.C. § 1681t(b)(1)(f) only preempts state law claims arising after a furnisher of information receives notice of a dispute—by either the consumer or a CRA—and claims arising before notice are governed by 15 U.S.C. § 1681h(e). *Holland v. GMAC Mort. Corp.*, No. 03-2666-CM, 2006 WL 1133224, at *11–12 (D. Kan. April 26, 2006).

This court is inclined to follow the reasoning set out in *Holland*. Although a private cause of action under the statute may only arise from a furnisher's conduct after receiving notice from a CRA, (per 15 U.S.C. § 1681s-2(b)), the responsibilities of a furnisher are not limited to those contained in subsection (b) and the statute does not set out this distinction in the preemption provisions. 15 U.S.C. § 1681s-2(b); *see Millett*, 2006 WL 1301160, at *2–3. The preemption provisions preempt state laws respecting subject matter regulated by the entire section 1681s-2. Certain of these subsections set out duties of furnishers not tied to notice and other duties that arise after notice by the consumer as well as by other parties. *See, e.g.*, 15 U.S.C. § 1681s-2(a)(1)(B).

Therefore, to the extent plaintiffs' defamation claims arise from defendants' conduct in

furnishing information to CRAs after defendants first received notice—from anyone—the claims are preempted by § 1681t(b)(1)(f). Based on the facts alleged in plaintiffs' complaint, the earliest defendants can be charged with notice is January 6, 2006. Although it is not clear exactly what plaintiffs believe to constitute the allegedly defamatory publications, there is no allegation that defendants published the purported delinquent debt to CRAs (and thus to potential creditors) before defendants were notified of the dispute concerning the debt.[3] Therefore, plaintiffs' defamation claims arising out of defendants' alleged publication to CRAs are dismissed.

However, to the extent the claims arise out of defendants' publication of alleged defamatory statements to others—specifically, to AMP—the claims are not preempted under this court's interpretation of the absolute immunity provision of § 1681t(b)(1)(f). The court therefore looks to the qualified immunity provision of § 1681h(e), which states: "no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." Plaintiffs allege that the "defamatory statements were made willfully and with malice in that defendants had substantial information by which they could have verified that plaintiffs did not owe the debt" and that defendants "willfully determined to follow inadequate procedures to review, verify, or confirm the validity of the purported debt prior to reporting it to . . . AMP." (Doc. 42-2, at 8.) Assuming these facts are true, as this court must, plaintiffs' defamation claim regarding statements to AMP is not

---

[3] By way of reply, plaintiffs attempt to salvage any claim they may have arising from defendants' alleged publication to CRAs by suggesting that such publication is done monthly, and would have continued after defendants received notice from the CRAs of plaintiffs' dispute. Plaintiffs failed to allege this in their original complaint, or the two proposed amended complaints, and this court declines to allow such a claim to stand based on the conclusory assertions contained in plaintiffs' reply.

preempted by § 1681h(e). The court next reviews defendants' other arguments to determine whether plaintiffs state a claim upon which relief can be granted.

### b. Specificity

Defendant argues that plaintiffs cannot satisfy the elements of defamation because plaintiffs' complaint is not sufficiently specific regarding the defamatory words, to whom they were made, when they were made, or where. The court notes that, contrary to defendants' assertion, Rule 9 of the Federal Rules of Civil Procedure does not require plaintiffs' defamation claim to be stated with particularity. Fed. R. Civ. P. 9(b); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–15 (2002) (holding that Rule 9(b) requires only fraud and mistake to be pleaded with particularity; courts are not permitted to add to this list). Nevertheless, "to effectively plead a defamation claim under Kansas law, a plaintiff must set forth the alleged defamatory words published, the names of those persons to whom they were published and the time and place of their publication." *Marten v. Yellow Freight Sys., Inc.*, 993 F. Supp. 822, 829 (1998); Kan. Stat. Ann. § 60-209(j). Plaintiffs' complaint alleges that "defendants published the purported delinquent debt . . . to AMP," but offers no factual support for a viable defamation claim against defendants. Plaintiffs' Count II is not specific to which defendant published the alleged defamatory statement, it does not contain the allegedly defamatory statement, nor does it offer when these statements occurred. (Doc. 42-2.) Plaintiffs' general pleading instead invites the court and defendants to speculate what statements, by whom, and when, might support the claim. However, Kansas law suggests that such deficiency requires a motion for a more definite statement by defendants, rather than a dismissal of the claim by the court. *Rinsley v. Frydman*, 559 P.2d 334, 338–40 (1977).

### c. Elements

Defendants suggest that, even if plaintiffs' defamation claim contained sufficiently specific

-14-

allegations, plaintiffs cannot, on the facts alleged, establish the essential elements of their defamation claim. The elements of defamation under Kansas law are: (1) false and defamatory words; (2) communication to a third party; and (3) resulting harm to the reputation of the person defamed. *El-Ghori v. Grimes*, 23 F. Supp. 2d 1259, 1269 (D. Kan. 1998). Defendants assert that plaintiffs' defamation claim fails because the credit reports were true. Indeed, plaintiffs admit that, although they "believed that the unauthorized payment had not actually been made to Chase" but "[i]n fact, plaintiffs discovered, after this suit was filed, that Chase had received the unauthorized payments. Plaintiffs then arranged for the payments to be returned to BOA." (Doc. 32-2, at 5.) However, at this point, the court will not evaluate the truth or falsehood of plaintiffs' alleged debt based on the pleadings. Plaintiffs allege that the closing of their BOA checking account terminated the agreed-upon automatic bill pay feature. Therefore, plaintiffs' complaint, viewed in the light most favorable to it, states a plausible claim.

#### d. Statute of Limitations

Finally, defendant suggests that the defamation claim fails as a matter of law because it was brought beyond the statute of limitations. Kansas has a one-year statute of limitation for libel and slander actions, which begins when the alleged defamatory statement is published. Kan. Stat. Ann. § 60-514(a). Plaintiffs filed this case on June 11, 2008. Therefore, the alleged defamatory statement(s) must have occurred subsequent to June 11, 2007. Defendant asserts that plaintiffs' complaint is unclear regarding what statements plaintiffs allege constituted defamation or when those statements were made. But defendant notes that collection notices from FIA referenced within the plaintiffs' complaint were dated as early as December 2006, and plaintiffs wrote to the credit reporting agencies disputing these allegedly untrue credit reports in May 2007. The court finds that the record is not sufficiently developed to determine, at this time, whether the defamation claims are

barred by the statute of limitations. As with the sufficiency of the evidence to support the elements of defamation, such a question would be more appropriately raised through a motion for summary judgment at a later date.

### 3. KCPA Claims

As discussed above, the FCRA's absolute immunity provision preempts plaintiffs' state law claims against BOA and FIA as furnishers arising out of subject matter regulated under section 1681s-2 after the furnisher received notice of a dispute. 15 U.S.C. § 1681t(b)(1)(f); *see*, *e.g.*, *Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350 (D. Kan. 2006); *Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418 (E. D. Pa. 2006). The Kansas Consumer Protection Act does not apply to the furnishing of information by a bank to a CRA, which is not a "consumer transaction" as defined by that act. *See Lowe v. Surpas Resource Corp.*, 253 F. Supp. 2d 1209 (D. Kan. 2003). Rather, the KCPA prohibits a "supplier" from engaging in "deceptive" or "unconscionable" acts or practices with a "consumer" in any "consumer transaction." *See* Kan. Stat. Ann. §§ 50-626, 50-627.

Although plaintiffs do not identify under which subsection of the Kansas Act liability is alleged, the complaint sets out conduct alleged to have violated the KCPA. Defendants suggest that plaintiffs' KCPA claim fails as a matter of law. Defendants argue that: FIA's transfer of plaintiffs' debt to a debt collector, and its reporting of the debt to the CRAs are not "consumer transactions"; plaintiffs were not "aggrieved" within the meaning of the statute; and defendants' conduct was not "deceptive" or "unconscionable." (Doc. 54, at 29–33.)

Specifically, plaintiffs' complaint first asserts that, pursuant to agreement, defendant BOA was obligated to disable or close down the online bill pay part of the account when plaintiffs closed their primary checking account, and their two-time failure to do so resulted in an unauthorized charge on their credit card of $5,200, owed to FIA, defendant's credit card division. Second,

plaintiffs assert that, pursuant to their agreement with BOA, plaintiffs were not to be liable for unauthorized transactions if they notified BOA within sixty days of any unauthorized transaction. Although plaintiffs provided timely notification, neither BOA nor FIA investigated plaintiffs' dispute or provided them relief. Third, plaintiffs asserts that, although BOA failed to close the account as it was bound to do, BOA and FIA reported plaintiffs as delinquent and sent bills to collectors, damaging plaintiffs' credit, and causing emotional distress. Fourth, plaintiffs assert that BOA's conduct in demanding that plaintiffs pay the credit card charges; insisting plaintiffs correct the error by prevailing on FIA or on Chase Bank; and sending the debt to debt collectors was oppressive and overreaching. Plaintiffs allege that defendants' conduct in taking oppressive advantage of plaintiffs' inability to do anything to correct defendants' error was deceptive and unconscionable. Plaintiffs allege that, in light of its conduct, BOA's zero-liability guarantee was untrue and deceptive; as were its promises to promptly investigate and report findings regarding unauthorized transfers.

To the extent the claim does not rest on the furnishing of information by a bank to a CRA, the KCPA claim is not preempted by the FCRA claim. The court notes that the guiding principle to be applied in interpreting the KCPA is that the act is to be liberally construed in favor of the consumer. Kan. Stat. Ann. § 50-623; *Willman v. Ewen*, 634 P.2d 1061, 1064 (Kan. 1981). And generally, the question of whether a deceptive act or practice has occurred under the KCPA is not a question of law for the court, but rather a question of fact for the jury to decide. *Manley v. Wichita Bus. Coll.*, 701 P.2d 893 (Kan. 1985); *see also Gonzales v. Assocs. Fin. Serv. Co. of Kan., Inc.*, 967 P.2d 312, 328 (Kan. 1998). At this time, the court is not willing to make the determinations defendants seek regarding whether the complained-of conduct occurred in connection with a "consumer transaction"; whether plaintiffs were "aggrieved"; or whether the conduct was

"deceptive" or "unconscionable."  Through a motion for summary judgment, this court may determine that the evidence does not create dispute as to a material fact.  But taking plaintiffs' allegations as true, the court finds that plaintiffs' complaint, as amended, states a plausible claim under the KCPA.

### 4. Waiver of Jury Trial

Defendant BOA asks the court to dismiss or strike plaintiffs' request for a jury trial, arguing plaintiffs expressly agreed to waive their right to a jury trial under the terms of the contract they entered with BOA for banking services that they now seek to enforce against BOA.  Parties may waive the right to a jury trial by contract.  *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988).  The key issue is whether the contractual waiver was "knowing and voluntary."  *See Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992) (implicitly adopting district court's "knowing and voluntary" standard).  This court does not have enough information to determine this issue as a matter of law.  *See Bevill Co. v. Sprint/United Mgmt. Co.*, No. 01-2524-CM, 2006 WL 2921006, at *1 (D. Kan. Oct. 11, 2006).  Defendants' request is denied without prejudice.

## V. Conclusion

Because plaintiffs' proposed second amended complaint alleges facts sufficient to support the elements of the claims it contains, this court finds that amendment would not be futile, and plaintiffs should be granted leave to amend their complaint to the extent set out above.  The court therefore orders that plaintiffs file their second amended complaint within ten days from the date of this order The court would note that defendant BOA's omnibus filing, which contained responsive briefing as well as motions both dispositive and non-dispositive, was not the appropriate vehicle for raising many of its arguments.  This is particularly true where, based on the posture of the case,

neither the parties nor the claims were squarely before the court.  Any inconvenience defendants may suffer from having to refile exhibits and other documents are outweighed by the interest of the court and the parties in the orderly administration of justice in which all arguments center on actual controversy rather than contingency, and where all parties receive a full and fair opportunity to be heard.

**IT IS THEREFORE ORDERED** that plaintiffs' motions to amend (Docs. 32, 42) are granted.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss (Doc. 52) is granted to the extent that plaintiffs' defamation claim arising out of publication to CRAs is dismissed.  Defendant's request to strike or dismiss plaintiffs' request for a jury trial is denied without prejudice.  Defendants' motion is otherwise denied.

**IT IS FURTHER ORDERED** that plaintiff file its second amended complaint within ten days from the date of this order.

Dated this 12th day of June 2009, at Kansas City, Kansas.

> **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**